**Nina J. NEWHALL and Patrick R. Newhall, Appellants,**

v.

**STATE of Alaska, Appellee.**

**No. A–4194.**

Court of Appeals of Alaska.

Dec. 31, 1992.

---

John E. McConnaughy, Anchorage, for appellant Nina J. Newhall.

H. Conner Thomas, Larson, Timbers & Van Winkle, Nome, for appellant Patrick R. Newhall.

Eric A. Johnson, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

COATS, Judge.

Nina and Patrick Newhall were convicted, based upon their pleas of no contest, of misconduct involving a controlled substance in the fourth degree, a class C felony. AS 11.71.040(a)(2). In entering their pleas, the Newhalls reserved the right to appeal Superior Court Judge Charles Tunley's denial of their suppression motion. *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974). We remand.

Judge Tunley made the following findings of fact in denying the Newhalls' motion to suppress. On June 4, 1990, Alaska State Trooper Donald Kitchenmaster appeared before Magistrate Bradley Gater. Trooper Kitchenmaster applied for a warrant to search a box which he had brought

with him to the magistrate. The box was six inches by ten inches by seven inches. Trooper Kitchenmaster told the magistrate that on June 3, 1990, personnel from the Alaska Airlines Gold Streak Department in Anchorage, Alaska, telephoned Alaska State Trooper Roy Minatra to report a suspicious package. The personnel informed Trooper Minatra that they had received a package, the box, which was identified in the invoice as containing two pounds of parts, but that the package did not appear to contain parts because the package made an unusual sound when it was moved or picked up. The personnel stated that they had sent the package by Gold Streak from Anchorage to defendant Kulowiye in Savoonga, Alaska, on June 3, 1990.

Trooper Kitchenmaster testified that as a result of receiving this information he went to the Alaska Airlines terminal in Nome, Alaska, and asked an employee there whether she had received a Gold Streak package. The employee checked and told the trooper that she had received a box. Trooper Kitchenmaster told the employee that the box possibly contained contraband. The employee told the trooper that the box did not feel like it contained parts, and stated, "Why don't I x-ray the package." Trooper Kitchenmaster responded that "it might be a good idea." The employee put the box in an x-ray screening device and Trooper Kitchenmaster saw what he thought looked like a liquor bottle.

Based on this testimony by Trooper Kitchenmaster, the magistrate found probable cause to believe that the box contained alcohol being sent into Savoonga in violation of the local option law, and issued a search warrant which authorized the trooper to search for alcohol. The magistrate explicitly stated that he found probable cause without considering any of the x-ray evidence.

Trooper Kitchenmaster then opened the box. Inside the box were two smaller packages, each wrapped in newspaper. Trooper Kitchenmaster opened the package in which, with the x-ray screening device, he had observed a bottle. He found a bottle which contained 375 milliliters of Canadian Club whiskey. According to trial court:

> He then opened the second package in the box, such also being wrapped in newspaper, being light, soft and compressible. Inside this package were two other packages wrapped in Saran Wrap. Trooper Kitchenmaster observed a green substance that he assumed was marijuana.... When opening the second package, Trooper Kitchenmaster testified that he knew it did not contain alcohol, assuming from the weight and feel thereof that it contained drugs of some sort.
>
> . . . .
>
> Trooper Kitchenmaster assumed this second package contained drugs of some type. I find this a stronger conclusion than the probable cause requirement discussed in *Reeves* [*Reeves v. State*, 599 P.2d 727, 739 n. 34 (Alaska 1979).] The package was sent at a considerable cost, i.e. $31.00. It clearly did not contain that noted on the invoice, i.e., parts. Only a small bottle of alcohol was found pursuant to the warrant. Trooper Kitchenmaster could manipulate the second package pursuant to the warrant to determine whether it contained alcohol. The weight was light and the package was soft. Trooper Kitchenmaster had been a trooper of 20 years experience and had been involved in over a half dozen cases involving drugs being shipped. Contraband was found in the package, i.e., alcohol. Based thereon I find and conclude that in the present case, ample evidence was presented to establish that the contraband nature of the second package seized from the box was immediately apparent to the officer who seized it, Trooper Kitchenmaster.

Trooper Kitchenmaster opened the package, finding marijuana. Judge Tunley upheld the search.

 The warrant in this case only authorized the police to search for alcohol. Since Trooper Kitchenmaster knew that the sec-

ond package did not contain alcohol, the warrant did not provide him with any authority to search that package. 2 W. La-Fave, *Search and Seizure*, § 4.10(d) at 329–30 (2d ed. 1987) (footnotes omitted). *See Anderson v. State*, 555 P.2d 251 (Alaska 1976).

■ In general, the police may not search a package without a warrant. This is true even though the police have abundant probable cause to believe that the package contains contraband. A case illustrating this principle is *Erickson v. State*, 507 P.2d 508 (Alaska 1973). In that case, a citizen informant brought the defendant's suitcase to the police station and told the police that the suitcase contained marijuana. The informant had actually seen the defendant place the marijuana in the suitcase. The police opened the suitcase and found the marijuana. The defendant moved to suppress, but the trial court upheld the search. On appeal, the supreme court rejected the theory that "abundant probable cause negates the need for a search warrant." *Id.* at 512. The supreme court noted that the informant had no authority to authorize the police to open the defendant's suitcase. Although the informant had seen the marijuana in the suitcase, the supreme court quoted with approval Justice Trainer's opinion in *People v. Marshall:*

> It is inherently impossible for the contents of a closed opaque container to be in plain view regardless of the size of the container or the material it is made of. A search of the container is necessary to disclose its contents.

*Erickson*, 507 P.2d at 513 (quoting *People v. Marshall*, 69 Cal.2d 51, 69 Cal.Rptr. 585, 589, 442 P.2d 665, 669 (1968)).

The supreme court found that when the police opened the suitcase, they had conducted a search which was illegal under the Fourth Amendment to the United States Constitution. *Erickson*, 507 P.2d at 513. It therefore seems apparent to us that Trooper Kitchenmaster did not have au-

thority under the warrant to search the package which contained marijuana and he could not search the package which contained marijuana merely because he had probable cause.

■ Trooper Kitchenmaster could search the second package only if its contents were in plain view. This is the theory which Judge Tunley applied in upholding the search, relying on *Reeves v. State*, 599 P.2d 727, 739–42 (Alaska 1979). In that case, a correctional officer who was conducting a preincarceration inventory search of Reeves discovered a balloon in Reeves' pocket. *Id.* at 730. The correctional officer unwrapped the balloon and discovered a brownish-colored powdery substance. The correctional officer called the police who took the balloon, tested it, and found that it contained an illegal opium derivative. *Id.* The state argued that the correctional officer could properly seize the balloon and search its contents because it was in "plain view." The supreme court stated that it had "recognized three basic requirements for a valid 'plain view' seizure of evidence: (1) the initial intrusion which afforded the view must have been lawful; (2) the discovery of the evidence must have been inadvertent; and (3) the incriminating nature of the evidence must have been immediately apparent." *Id.* at 738 (footnote omitted). *But see Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). The supreme court found in *Reeves* that the question turned on whether "the incriminating nature of the evidence [was] immediately apparent." *Reeves*, 599 P.2d at 738–39. The court stated:

> [I]t is not a certainty but rather probable cause which is required to justify a plain view seizure. Therefore, the question precisely posed in the context of this case is whether the correctional officer's seizure and search of the balloon was based on his reasonable judgment prior to the seizure that the balloon contained contraband, and whether that belief was grounded upon probable cause....

Thus, while the opaque quality of the balloon does not preclude a plain view

seizure here, we must determine whether the correctional officers' seizure was based on probable cause. In making this determination, we consider the correctional officers' testimony at the suppression hearing as well as the totality of the circumstances in which this seizure occurred. The state bears the burden of proof and thus it must appear by a preponderance of the evidence that the seizure and search of the balloon in this case was supported by the requisite probable cause.

*Id.* at 739–40 (footnotes omitted).

In *Reeves*, the majority of the supreme court reviewed the correctional officer's testimony and concluded that "he opened the balloon and examined its contents not because he believed it to be contraband, but simply pursuant to the standard inventory routine at the jail." *Id.* at 740 (footnote omitted).[1]

Judge Tunley also relied on *Schraff v. State*, 544 P.2d 834, 847 (Alaska 1975). In *Schraff*, a police officer found a foil packet in a suspect's wallet. The officer seized the foil packet and opened it. The supreme court upheld the search. The court stated:

In the present case, Officer Lewis, a trained narcotics investigator, testified that the foil packet was identical to so-called 'slips' which are used to carry a variety of illicit drugs. He was certain that the packet was a 'slip', and he had never seen a 'slip' that was not used for carrying narcotics and dangerous drugs. He therefore concluded that the foil undoubtedly contained illicit drugs.

In addition, the package was not firmly within police custody at the time it was seized. Instead, it was on' the person of a man who was in a public bar, accompanied by a relatively coherent friend, who seemingly had access to an automobile. Thus, the exigency of the situation, when

coupled with Officer Lewis' experience and unequivocal testimony regarding his recognition of the contraband nature of the foil packet, convinces us that both the search and seizure of the packet were lawful....

*Id.* at 847 (footnotes omitted).

■■ Under *Erickson*, we know that the police cannot open a package even if they have abundant probable cause. We also know that if the police find a movable container in plain view, and if they have probable cause to believe that the container contains contraband, the police may seize the item temporarily until they obtain a search warrant. *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). The difficult question is determining when the police have sufficient information to look into an opaque container as the Supreme Court of Alaska authorized in *Schraff.*

We believe that the key to this question is found in a footnote in *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). In that case, the United States Supreme Court held that the automobile exception did not authorize the police to search a suitcase which they found in the trunk of a taxicab. The Court reasoned that since the police only had probable cause to search the suitcase, rather than the entire car, the automobile exemption did not apply. The search of the suitcase without a warrant violated the Fourth Amendment. In the footnote, the *Sanders* Court limited its holding as follows:

Not all containers and packages found by the police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents

---

1. Justices Boochever and Matthews dissented. They agreed with the majority's statement of the requirements for a plain view seizure and also with the test for determining whether the incriminating nature of the evidence was immedi- ately apparent. Justices Boochever and Matthews stated that they would have remanded the case for a further hearing based upon these standards. *Reeves,* 599 P.2d at 743.

can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to "plain view," thereby obviating the need for a warrant.

*Sanders,* 442 U.S. at 764–65 n. 13, 99 S.Ct. at 2593 n. 13.

LaFave discusses this footnote and its application in other cases at 3 W. LaFave, *Search and Seizure,* § 7.2(d) at 66–74 (2nd ed. 1987). LaFave points out that the test which the Supreme Court will apply in these cases is uncertain. However, he concludes that the cases do not support the conclusion that the police only need probable cause before they can say that the contents of a container can be inferred from its outward appearance. *Id.* at 70–71. In *United States v. Williams,* 822 F.2d 1174, 1184–85 n. 113 (D.C.Cir.1987), the court pointed out that:

> [The Supreme] Court has repeatedly held that probable cause to believe that a container in a vehicle holds contraband—in effect, probable cause to seize the container—will not justify a warrantless opening thereof.

The *Williams* court concluded that:

> [T]he contents of a package cannot be deemed in plain view unless [the information available to the officer] convinces the officer to a reasonable certainty that the container holds contraband or evidence of a crime. This situation is clearly distinguishable from one involving a plain view seizure. Probable cause—a predictive judgment that further investi-

gation will yield particular results—suffices to exempt the seizure from Fourth Amendment warrant requirements. In the present type of situation the information in 'plain view' must be good enough to eliminate all need for additional search activity. This can only occur when sensory information acquired by the officer rises to a state of certitude, rather than mere prediction, in regard to the object of the investigation. This level of conviction must be objectively reasonable in light of the officer's past experience and training, and capable of verification by a reviewing court.

*Id.* at 1184–85 (footnote omitted).

■ It therefore appears that under the Fourth Amendment to the United States Constitution a police officer may open a package under the plain view theory only if the contents of the container were identifiable to a virtual certainty.[2] The police are required to have more than probable cause to inspect the contents of the package; the officer can search the package only when the information which the officer has "rises to a state of certitude, rather than mere prediction[.]" *Williams,* 822 F.2d at 1184–85.

■ In deciding this case, it appears that Judge Tunley applied the probable cause test which the supreme court set forth in *Reeves.*[3] To the extent that *Reeves* permits the police to *seize* contraband based on probable cause, the *Reeves* case is consistent with federal law. *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502.

2. In *Texas v. Brown,* three Justices of the Supreme Court addressed the question of when the police could search a container under the plain view exception to the warrant requirement. 460 U.S. at 747–51, 103 S.Ct. at 1546–48. The *Brown* case involved an officer seizing a green balloon which the officer found in the interior of Brown's car. Justices Stevens, Brennan, and Marshall stated that the officer could search the contents of the balloon only under certain limited circumstances. These Justices stated that the officer could search the balloon if "the balloon could be one of those rare single-purpose containers which 'by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their

outward appearance.'" *Id.* at 750–51, 103 S.Ct. at 1548. (quoting *Sanders,* 442 U.S. at 764–65 n. 13, 99 S.Ct. at 2593 n. 13.) They also stated the test as follows: "[v]iewing it where he did could have given the officer a degree of certainty that is equivalent to the plain view of the heroin itself." *Brown,* 460 U.S. at 751, 103 S.Ct. at 1548. The court concluded that "there was virtual certainty that the balloon contained a controlled substance." *Id.*

3. We recognize, however, that Judge Tunley did say that Trooper Kitchenmaster's conclusion was "a stronger conclusion than the probable cause requirement discussed in *Reeves....*"

However, to the extent that *Reeves* authorizes the police to *search* a closed container based on probable cause it is not consistent with federal law.[4]

In any event, under federal law the police may not open a package under the plain view theory based merely on probable cause. We must apply the federal standard in deciding the Newhalls' rights under the Fourth Amendment to the United States Constitution. We accordingly remand this case to Judge Tunley to apply the federal standard to the facts of this case.[5] We retain jurisdiction.

REMANDED.

BRYNER, C.J., concurs.

BRYNER, Chief Judge, concurring.

Although I agree with, and join in, the court's decision, I write separately to add three points. First, the court's opinion relies heavily on *Arkansas v. Sanders*, 442 U.S. 753, 764 n. 13, 99 S.Ct. 2586, 2593 n. 13, 61 L.Ed.2d 235 (1979), and *United States v. Williams*, 822 F.2d 1174, 1184–85 & n. 113 (D.C.Cir.1987), in formulating the "federal standard" that we ask the trial court to apply on remand. The opinion gives only secondary mention to the standard articulated in the three-justice concurrence in *Texas v. Brown*, 460 U.S. 730, 747–51, 103 S.Ct. 1535, 1546–48, 75 L.Ed.2d 502 (1983). Although I view all three of these cases as making essentially the same point in slightly different language, I find the *Texas v. Brown* concurrence the most lucid explanation.

The formulation of the standard in *Texas v. Brown* seems particularly compatible with the notion of immediate apparency that this court recently addressed in *Brown v. State*, 809 P.2d 421, 423–24 (Alaska App.1991), and that the Alaska Supreme Court addressed in *Reeves v. State*, 599 P.2d 727, 728–40 (Alaska 1979). Although *dicta* in the majority opinion in *Reeves* somewhat blurred the distinction between plain view seizures and searches, I do not believe that *Reeves* is inconsistent with this standard. For these reasons, I would prefer to rely on the *Texas v. Brown* concurrence as describing the standard to be applied on remand.

Second, while the court's opinion simply remands for application of the "federal standard," I would make it clear that my decision to follow this standard is based on state constitutional law, that is, on the Alaska Constitution's provisions guarantee-

---

**4.** We note that the *Reeves* case involved the seizure and search of a balloon which contained drugs. It is possible that in deciding the case the supreme court was influenced by the fact that a "balloon could be one of those rare single-purpose containers which by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." *Brown*, 460 U.S. at 750–51, 103 S.Ct. at 1548 (Stevens, J., concurring). *See also Brown v. State*, 809 P.2d 421, 423–24 (Alaska App.1991).

**5.** In evaluating whether Trooper Kitchenmaster's information concerning the contents of the package rose "to a state of certitude,". Judge Tunley could properly consider the circumstances known to the trooper at the time of the search. In *Brown v. State*, we held that a correctional officer could consider the circumstances under which he saw a balloon in concluding that it was "immediately apparent" to the correctional officer that the balloon contained drugs. *Brown*, 809 P.2d at 423.

[A]mple evidence was presented to establish that the contraband nature of the balloon seized from Brown was immediately apparent to the officer who seized it. [Officer] Drew saw [Inmate] Brown swallow an object that had just been handed to him [by a visitor] during a contact visit at a correctional facility. Under the circumstances, Drew immediately recognized that the object Brown swallowed probably contained contraband. This likelihood was reinforced when the object was retrieved and proved to be a balloon. Both Drew and the Alaska State Trooper ... testified that, based upon their training and experience, they were aware that balloons of the type Brown swallowed are commonly used to carry illegal drugs. Accordingly, under both *Schraff* and *Reeves*, it appears that the plain view exception to the warrant requirement justified the seizure and opening of the balloon in this case.

*Id.* at 423–24. *See also United States v. Williams*, 822 F.2d 1174, 1184 (D.C.Cir.1987); 3 W. LaFave, *Search and Seizure*, § 7.2(d) at 71–74.

ing freedom from unreasonable searches and seizures and the right to privacy. Alaska Const. art. I, §§ 14, 22. Our espousal of the "federal standard" should not, and, in my view, does not, hinge on its current or future viability under the federal constitution.

Third, with regard to the proper application of the "federal standard," I would raise a note of caution against placing undue emphasis on degree of certainty as the sole determinant of a proper warrantless search. Although a high degree of certainty as to the presence of contraband may well be a prerequisite to a warrantless search of a closed, opaque container under the plain view doctrine, it is not the only prerequisite. As the Alaska Supreme Court made clear in *Erickson v. State*, 507 P.2d 508, 512 (Alaska 1973), even "abundant probable cause" does not negate the warrant requirement.

Degree of certainty, or level of probable cause, is not in and of itself sufficient. The core concern of the warrant requirement is privacy. As *Texas v. Brown, Arkansas v. Sanders*, and *United States v. Williams* establish, the plain view exception is founded on the theory that there can be no reasonable expectation of privacy when contraband is in plain view. It is for this reason that the doctrine allows the warrantless opening of a properly seized container—such as a bottle or a plastic bag—which is transparent and unmistakably reveals its contents to be contraband. No reasonable person could maintain that any vestige of privacy remains in the container.

This same rationale must control when the state invokes the plain view doctrine to justify the warrantless opening of a container that is opaque, rather than transparent. The pivotal inquiry must be whether observation of the unopened container amounts to a virtual, if not literal, observation of its contents—an "equivalent to the plain view of [the contraband] itself." *Texas v. Brown*, 460 U.S. at 751, 103 S.Ct. at 1548. If such equivalency exists, all reasonable expectation of privacy in the contents of the container ceases, and the plain view doctrine allows its warrantless opening; if not, a warrant must be obtained, or some other recognized exception to the warrant requirement shown. For purposes of the plain view doctrine, it matters little if observations involve sight, sound, smell, or feel, provided that they are properly made and do not result from separate violations of the warrant requirement.

It is crucial to draw the distinction between this notion of literal transparency, on the one hand, and a mere increase in the degree of certainty as to the presence of contraband, on the other. When a closed container, by its nature and the circumstances surrounding its use, is capable of simultaneously holding both legitimate articles and contraband, even the highest degree of certainty that contraband is present will not be equivalent to a plain view of its contents. In such a case the certain presence of contraband cannot in itself extinguish the owner's continued right to expect privacy as to other contents, which may be legitimate. A paradigm of this situation is the suitcase in *Erickson*, the warrantless opening of which the Alaska Supreme Court refused to justify under the plain view doctrine, despite a heightened level of probable cause. 507 P.2d at 513–14.

This distinction between virtual observation of a container's contents and increased certainty as to the presence of contraband lies at the heart of Justice Stevens' reference, in *Texas v. Brown*, to *"single-purpose* containers which 'by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance.'" 460 U.S. at 750–51, 103 S.Ct. at 1548 (emphasis added) (quoting *Arkansas v. Sanders*, 442 U.S. at 764–65 n. 13, 99 S.Ct. at 2593–94 n. 13). I believe we must honor this distinction if we are to avoid drifting away from the sound moorings of the plain view doctrine, into the uncharted waters of "super" probable cause—waters vast enough to engulf the entire warrant requirement.