John Greenway McGUIRE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8216.

Court of Appeals of Alaska.

May 30, 2003.

Marcia E. Holland, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

During a pat-down search for weapons, a police officer felt a plastic baggie containing bindles (single-purpose paper packages used for transportation of narcotics) in the pocket of John G. McGuire's pants. Ultimately, the officer seized the baggie, opened a bindle, tested its contents for controlled substances, and discovered cocaine. This evidence led to a grand jury indictment charging McGuire with one count of third-degree misconduct involving a controlled substance.[1]

McGuire moved to suppress the cocaine, arguing that the search went beyond the permissible scope of a pat-down for weapons. After an evidentiary hearing, Superior Court Judge Mary E. Greene issued a decision denying the motion. McGuire entered a no contest plea to fourth-degree misconduct involving controlled substances,[2] preserving his

---

1. AS 11.71.030(a) (possession of cocaine with intent to deliver).

2. AS 11.71.040(a) (possession of cocaine).

right to appeal the denial of his suppression motion.[3]

We agree with Judge Greene's conclusion that the cocaine was discovered pursuant to a legal pat-down search and that the officer was permitted to seize the baggie. Therefore, we affirm the superior court.

*Facts and proceedings*

Alaska State Trooper Scott Johnson was among several police officers responding to a report of a large fight with a weapon fired or brandished outside a Fairbanks bar. Trooper Johnson patted down several people for weapons, including McGuire. While he was patting McGuire down, Trooper Johnson felt what he believed was a plastic baggie that "made the crackling sound consistent with a plastic baggie" in the pocket of McGuire's lightweight cargo pants. He also felt "the 90 degree rectangular ... corners of paper bindles." Johnson perceived what he thought were bindles without squeezing McGuire's pocket.

When Trooper Johnson felt the bindles, he was "absolutely certain" McGuire had narcotics. Johnson asked McGuire what he had in his pocket and McGuire responded that it was "his marijuana." Johnson removed the baggie, saw several bindles inside, and field-tested the contents of the bindles for narcotics. The bindles contained cocaine and McGuire was arrested.

After the grand jury returned the indictment, McGuire moved to suppress the cocaine, arguing he had been subjected to an illegal search "beyond the scope of a limited pat-down search for weapons." Judge Greene conducted an evidentiary hearing at which only Trooper Johnson testified.

At the evidentiary hearing, the State argued that Trooper Johnson was justified in seizing and opening the bindles he found during a lawful pat-down search because he was absolutely certain that the bindles contained illicit substances. The State argued,

"This is like plain feel doctrine and ... the drugs were in plain view at that time and he was able to open up the pocket to take the baggie out." The State cited *Newhall v. State*[4] for the proposition that officers may seize a container that they are at least virtually certain contains contraband under the plain view doctrine.

McGuire did not address the State's "plain feel" argument. Instead, McGuire cited *State v. Joubert*[5] for the proposition that Trooper Johnson could only search McGuire for guns. McGuire conceded the validity of the pat-down search: "I wouldn't fault the officer for making the pat-down search for a weapon under what I understand to be the circumstances in this case." However, McGuire argued that Trooper Johnson exceeded the scope of a permissible weapons pat-down search. McGuire claimed that Trooper Johnson reached into his pocket on suspicion that the pocket might contain narcotics.

Judge Greene stated that she recollected an explicit United States Supreme Court plain feel case called "Dickerson" or "Dickinson," and that she would review that case as well as *Newhall* and *Joubert* before issuing a written order. Later that day, the State filed a notice of supplemental authority, citing *Minnesota v. Dickerson*,[6] as well as two opinions from other states.

In her written order, Judge Greene found that the facts were undisputed, that Trooper Johnson conducted a legitimate pat-down for weapons, and that during this pat-down he felt bindles in a plastic bag that he was certain would contain illegal drugs. She relied on *Minnesota v. Dickerson* to find that "[p]olice officers may seize contraband that is clearly non-threatening detected during a pat-down permitted by *Terry v. Ohio*[7] ... without violating the Fourth Amendment." Judge Greene concluded that the seizure from McGuire's pocket of the plastic bag

---

**3.** *See Cooksey v. State,* 524 P.2d 1251, 1255–57 (Alaska 1974).

**4.** 843 P.2d 1254 (Alaska App.1992).

**5.** 20 P.3d 1115 (Alaska 2001).

**6.** 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993).

**7.** 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

containing the bindles was lawful. In addition, Judge Greene ruled that opening the bindles was legal under *Newhall,* because the contents of the bindles were identifiable to a virtual certainty.

McGuire moved to reconsider and requested an additional evidentiary hearing on the scope of Trooper Johnson's pat-down search, because the "authority presented by the state and relied on by the court in making its decision was not made known to defense counsel prior to hearing." Judge Greene denied reconsideration. McGuire appeals.

*Did the trooper lawfully seize and open the bindles he found in McGuire's pocket?*

■ Although Judge Greene did not expressly discuss the scope of Trooper Johnson's pat-down search of McGuire, the judge noted that McGuire did not dispute Johnson's testimony concerning the scope and intensity of the pat-down.

During his testimony, Johnson was asked whether the pat-down involved "reaching and grabbing into things." He answered, "No, it's just an outer search with your fingertips." He then described how he had discovered the baggie containing the bindles:

> [McGuire] was wearing ... lightweight cotton pants [with] cargo pockets.... [A]s I was patting [the left pocket], I could feel a plastic baggie inside. It made [a] crackling sound consistent with a plastic baggie. And when I was patting it down with my fingertips, I could feel the 90 degree rectangular ... corners of paper bindles inside.

The prosecutor asked Johnson if he had had to squeeze McGuire's pocket to discover these bindles. Johnson answered no: he was able to detect the bindle corners with only a light touch of his fingertips.

McGuire did not cross-examine Johnson concerning the scope or the intensity of the pat-down, except to confirm that Johnson was conducting the pat-down in an effort to discover weapons, and that Johnson knew for

certain that the baggie and the bindles did not feel like a weapon.

At the evidentiary hearing in the superior court, and on again appeal, McGuire and the State argue about whether Trooper Johnson could have been "certain," based on sense of touch alone, that McGuire's pocket contained narcotics.

The State asserts that when Johnson felt a baggie containing slim rectangular objects, there was only one reasonable conclusion to be drawn: that these slim rectangular objects were "bindles"—*i.e.,* distinctive paper containers whose sole purpose is to serve as envelopes for narcotics. The State argues that once Johnson was certain that McGuire's pocket contained narcotics, he was entitled to seize the bindles from the pocket and open them.[8]

McGuire argues that Johnson could not have identified the contents of McGuire's pocket with certainty based on touch alone. He asserts that there are many types of slim rectangular objects that might be found in a baggie in a pocket—sticks of gum or baseball cards, for example. McGuire contends that Johnson could not have become certain that these objects were bindles until he removed the baggie from McGuire's pocket and looked at the objects.

We, too, are skeptical that Johnson could have identified the slim rectangular objects as bindles (to the exclusion of anything else) based on touch alone. However, we conclude that this issue is moot.

We assume, for purposes of argument, that Johnson's touch of the baggie and the bindle edges did not give him probable cause to believe that McGuire was in possession of narcotics. However, Johnson's touch gave him at least an articulable suspicion that this was the case. Armed with this articulable suspicion, Johnson could properly ask McGuire what was in his pocket. When McGuire answered that he was carrying an illicit drug (marijuana), this established probable cause for an arrest—thus justifying a search of McGuire's pocket incident to arrest.

---

**8.** *See Schraff v. State,* 544 P.2d 834, 847 (Alaska 1975) (upholding the seizure and ensuing warrantless search of an aluminum foil "slip").

McGuire points out that Johnson testified at the evidentiary hearing that he did not believe McGuire when McGuire asserted that the baggie contained marijuana. But Johnson's testimony reveals that he did not think that McGuire was jesting about possessing illicit drugs. Rather, Johnson disbelieved McGuire's assertion only in the sense that Johnson was fairly sure that McGuire, when he admitted to possessing marijuana, was attempting to conceal the fact that his crime was more serious than possession of marijuana.

Here, the crucial fact is that McGuire admitted that he was currently breaking a drug law in Johnson's presence. Even though there may have been some uncertainty as to the degree of McGuire's offense, his statement provided probable cause for an arrest and a search incident to arrest—thus justifying Johnson in removing the baggie from McGuire's pocket.

Once Johnson removed the baggie from McGuire's pocket and could see for himself that it contained bindles, Johnson could lawfully open these bindles and examine their contents.[9]

For these reasons, we uphold Judge Greene's denial of McGuire's suppression motion.

*Did Judge Greene abuse her discretion by denying McGuire's motion to reconsider?*

 McGuire argues that Judge Greene erred because she denied his motion to reconsider. We uphold the superior court's order unless we are convinced that the court abused its discretion.[10]

In his reconsideration motion, McGuire requested an additional evidentiary hearing about the scope of Trooper Johnson's pat-down search because he was not aware of *Dickerson* and the "authority presented by the state and relied on by the court in mak-

ing its decision was not made known to defense counsel prior to hearing." But McGuire obviously knew that the scope of Trooper Johnson's pat-down search was the issue in the case because that was how McGuire himself framed the issue in the memorandum in support of his motion: the search was "beyond the scope of a limited pat-down search for weapons[.]" And the State said in the opposition it filed that "it is apparent that the discovery and seizure of the clear baggie containing cocaine resulted from a lawful plain view search. The frisk was lawful, Trooper Johnson immediately recognized that the plastic baggie he felt was consistent with the manner in which illicit drugs are packaged."

*Dickerson* had been decided more than five years before the hearing, and the State's memorandum in opposition informed McGuire that the State was relying on the plain-view doctrine as extended to the sense of touch. Furthermore, at the conclusion of the hearing, McGuire did not request to submit any additional briefing or present additional authority to the court. The case proceeded to argument on the motion with no objection or request for additional briefing from McGuire. Finally, as our discussion above shows, the record supports Trooper Johnson's seizure and examination of the cocaine bindles found on McGuire without resort to *Dickerson*. We conclude that Judge Greene did not abuse her discretion when she denied reconsideration.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

**9.** See *Schraff,* 544 P.2d at 847; *see also Newhall,* 843 P.2d at 1259 ("[U]nder the Fourth Amendment to the United States Constitution[,] a police officer may open a package under the plain view theory ... if the contents of the container [are] identifiable to a virtual certainty. The police are required to have more than probable cause to inspect the contents of the package; the officer

can search the package only when the information which the officer has rises to a state of certitude, rather than mere prediction.") (internal quotes and citation omitted).

**10.** *Magden v. Alaska USA Federal Credit Union,* 36 P.3d 659, 661 (Alaska 2001).