NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter.* *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

# IN THE COURT OF APPEALS OF THE STATE OF ALASKA

JESUS ALBERTO CARDENAS,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12470
Trial Court No. 3AN-14-7883 CR

O P I N I O N

No. 2621 — November 9, 2018

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael R. Spaan, Judge.

Appearances: Jane B. Martinez, Law Office of Jane B. Martinez, LLC, under contact with the Office of Public Advocacy, Anchorage, for the Appellant. Timothy W. Terrell, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge ALLARD.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Jesus Alberto Cardenas was the driver of a car that was stopped for reckless driving. During the traffic stop, the officer asked Cardenas whether he had any guns in his vehicle. Cardenas replied in the affirmative, and moved his body and hands towards the back seat, where a black fabric rifle case was sitting. The rifle case was fully zipped up and lying on the back seat behind the passenger seat, outside Cardenas's immediate reach.

The officer ordered Cardenas to keep both of his hands on the steering wheel. Cardenas complied with this request, and he remained polite and cooperative throughout the traffic stop. The officer decided to secure the rifle case while he ran Cardenas's registration and identification through the system. After telling Cardenas what he planned to do, the officer took the black soft-sided rifle case from the back seat and carried it to his patrol car.

After getting into his patrol car, the officer opened the rifle case and conducted a thorough search of its contents, opening the smaller compartment of the rifle case first. In this smaller compartment, the officer found an Airsoft pellet gun, a wad of cash, a box of plastic baggies, and several plastic bags with a white powdery substance that was later determined to be cocaine. The officer then opened the larger part of the rifle case and found an unloaded assault rifle and a magazine of ammunition.

After discovering the drugs and weapons in the rifle case, the officer radioed for backup. After the backup arrived, the officers arrested Cardenas. A subsequent search of Cardenas's vehicle pursuant to a search warrant revealed additional drugs — methamphetamine and cocaine — in the car.

Cardenas later moved to suppress all of this evidence arguing that the seizure and search of his rifle case was unlawful. The superior court denied Cardenas's suppression motion, concluding that both the seizure and the search of the rifle case were justified under the "officer safety exception to the warrant requirement."

Following the denial of his motion to suppress, Cardenas waived his right to a jury trial and agreed to a bench trial on stipulated facts. At trial, the judge acquitted Cardenas of third-degree misconduct involving a controlled substance (possession of methamphetamine with intent to deliver), but convicted him of the lesser-included offense of fourth-degree misconduct involving a controlled substance (possession of methamphetamine).[1] The judge also convicted Cardenas of second-degree weapons misconduct (for possessing a gun during the commission of a drug offense)[2] and third-degree misconduct involving a controlled substance (possession of cocaine with intent to deliver).[3]

Cardenas now appeals, arguing that the superior court erred when it denied his motion to suppress. For the reasons explained here, we agree with Cardenas that the search of his rifle case was unlawful, and we therefore reverse his convictions.

*Why we conclude that the officer's search of the rifle case was unlawful*

Whether a search is lawful is a mixed question of fact and law.[4] On appeal, we review the trial court's factual findings for clear error, but we independently review whether those facts provided a justification for the challenged search.[5]

---

[1] Former AS 11.71.040(a)(3)(A)(ii) (pre-2016 version). The current judgment incorrectly states that Cardenas was convicted of third-degree misconduct involving a controlled substance.

[2] AS 11.61.195(a)(1).

[3] Former AS 11.71.030(a)(1) (pre-2016 version).

[4] *Wilburn v. State*, 816 P.2d 907, 911 (Alaska App. 1991).

[5] *Id.*

Here, the facts are largely undisputed. The parties agree that the traffic stop was lawful and that the stop was not yet complete when the search of the rifle case occurred. The parties also agree that, with the exception of the initial body movement towards the rifle case that alarmed the officer, Cardenas was fully cooperative during the traffic stop.

Thus, the primary question for us to decide in this appeal is whether these facts provided a reasonable basis for the officer's seizure and subsequent search of the rifle case.

In *Michigan v. Long*, the United States Supreme Court held that police officers who are performing a traffic stop may conduct a limited search of the vehicle for weapons if the circumstances give the officers reasonable suspicion that the driver or another occupant of the vehicle "is dangerous and ... may gain immediate control of weapons."[6] As the Supreme Court explained,

> [w]hen [an] officer "has a reasonable belief that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it [is] unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and[, if so,] to neutralize the threat of physical harm."[7]

The State contends that this exception applies here because the officer knew that Cardenas had access to a gun and the officer had reason to believe that Cardenas might use this gun against the officer based on Cardenas's initial movement, which "concerned" the officer. In its briefing on appeal, the State focuses its arguments primarily on the officer's initial seizure of the rifle case. According to the State, once the

---

[6]  *Michigan v. Long*, 463 U.S. 1032, 1049 (1983).

[7]  *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 24 (1968)).

officer became aware of the rifle, the officer was justified in removing the rifle case from Cardenas's reach to ensure his own personal safety while he completed the remainder of the traffic stop. But even assuming that the officer was entitled to take reasonable steps to ensure that the rifle was not within Cardenas's immediate reach and that these reasonable steps could include seizing the case, this could still be accomplished without opening the closed rifle case.

The State argues that, once the case was lawfully seized, the search of the rifle case was justified under the "single-purpose" container exception articulated in *Arkansas v. Sanders.* Footnote 13 of *Arkansas v. Sanders* states:

> Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support a reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to "plain view," thereby obviating the need for a warrant.[8]

The State interprets this language to mean that an officer is always entitled to open a rifle case if it is identifiable as a rifle case.

This is a misinterpretation of the "single-purpose" container exception. Like the "plain view" doctrine on which it is based, the "single-purpose" container exception applies when the incriminating nature of the container's contents is immediately

---

[8] *Arkansas v. Sanders*, 442 U.S. 753, 764 n.13 (1979), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565, 579-80 (1991); *see also United States v. Meada*, 408 F.3d 14, 23 (1st Cir. 2005) ("Although a person generally has an expectation of privacy in items he places in a closed container, some containers so betray their contents as to abrogate any such expectation.").

apparent.[9]  An officer is entitled to seize items that are in plain view if their contraband nature or evidentiary significance is apparent.[10]  But a person's expectations of privacy in their personal belongings does not automatically disappear simply because the internal contents of a closed container are apparent from its outside appearance.  Thus, for example, an officer is not entitled to open and search a person's computer case simply because the case is immediately identifiable as containing a computer, if the person's possession of the computer is not itself incriminating.

Here, there was nothing obviously unlawful about Cardenas's possession of a rifle.[11]  Unlike other situations where such searches have been upheld, there was no indication that Cardenas was prohibited from carrying a firearm.[12]  Nor was there any

---

[9]  *See* 3 Wayne R. LaFave, *Search and Seizure* § 5.5(e), at 340-41 (5th ed. 2012) ("[T]he rule appears to require (i) a high degree of certainty about the contents of the container, (ii) ascertained from the nature of the container itself."); *Ambrose v. State*, 221 P.3d 364, 367 (Alaska App. 2009) (officer was justified in opening bindle because it was immediately recognizable as a single-purpose package used to carry illegal drugs); *see also Reeves v. State*, 599 P.2d 727, 738-39 (Alaska 1979); *Howard v. State*, 209 P.3d 1044, 1050 (Alaska App. 2009); *McGuire v. State*, 70 P.3d 1114, 1116-17 (Alaska App. 2003).

[10]  *See Daygee v. State*, 514 P.2d 1159, 1162 (Alaska 1973); *Reeves*, 599 P.2d at 738; 2 Wayne R. LaFave et al., *Criminal Procedure* § 3.7(f), at 297 (3d ed. 2007) ("An object may not be seized from a car merely because the police plain view of it was lawfully acquired; there must be probable cause that the object is a fruit, instrumentality or evidence of crime. And under the 'immediately apparent' requirement ... this probable cause must be determined without examination of the object other than is justified by the purpose underlying police entry of the vehicle.").

[11]  Alaska law places few restrictions on firearm ownership, and does not require permits for possession of most guns. *See* AS 11.61.190-.220.  State law allows guns to be carried and stored in vehicles. AS 18.65.800.

[12]  *Compare United States v. Meada*, 408 F.3d 14, 23-24 (1st Cir. 2005) ("What justified the search of the gun case was that it reasonably appeared to contain a gun and that, as a

(continued...)

reason to suspect that the firearm had been stolen or that Cardenas's possession of the firearm was otherwise unlawful.[13]  Thus, contrary to the State's assertion, the single-purpose container doctrine does not justify the search that occurred here.

The search was also not justified by officer safety concerns.  At the evidentiary hearing, the officer testified that he opened the rifle bag for three reasons: (1) he wanted to be sure the gun Cardenas told him he had in the car was in fact in the rifle case; (2) he wanted to unload and secure the rifle to ensure that he was not shot by Cardenas; and (3) he wanted to determine what kind of gun was in the case.  As the superior court recognized, the third reason was obviously faulty.  The officer's curiosity as to what type of gun Cardenas owned was irrelevant to whatever safety concerns existed.  But the other two reasons were also faulty.  Cardenas *told* the officer that he had a gun in the back seat, and he gestured towards the rifle case.  It was not necessary for the officer to open the rifle case to confirm that the gun existed.  There was also no need to open the rifle case to ensure that the rifle was no longer within Cardenas's reach.  The officer had already isolated Cardenas from the rifle case by removing it from the car.[14]

---

[12]  (...continued) convicted felon, Meada was prohibited from possessing one.  Given that reasonable appearance, the fact that, upon opening and careful inspection, the gun case might turn out to contain something other than a gun was irrelevant."), *with United States v. Villarreal*, 963 F.2d 770, 776 (5th Cir. 1992) (holding that drums labeled as phosphoric acid but actually filled with marijuana could not be searched without a warrant under the single-purpose container exception because phosphoric acid is not associated with criminal activity).

[13]  *See* AS 11.61.220(a) (defining fifth-degree weapons misconduct as including, *inter alia*, possession of a loaded firearm in a bar; possession of a firearm by an unemancipated minor who has not obtained consent by a parent or guardian; and knowing possession of a firearm on the grounds of a child care facility, in a courtroom, or in a domestic violence shelter).

[14]  *See Arizona v. Gant*, 556 U.S. 332, 351 (2009) (tying the justification for vehicle
(continued...)

In the proceedings below, the trial court speculated that, as a matter of gun safety, the officer may have wanted to check to make sure the rifle was unloaded before he moved it. But the officer apparently did not have these safety concerns when he transported the closed rifle case to his patrol car before he opened it. Moreover, these gun safety concerns (to the extent they existed) could have been addressed by securing the rifle case in the trunk of the car or by requesting Cardenas to step out of the car. This was not a situation where the officer had to secure a gun that had been discarded or that otherwise posed a threat to public safety.[15]

In its brief, the State highlights the inherent dangerousness of traffic stops and the fact that this officer was working alone without any back up. We acknowledge this inherent danger and the increased concern for officer safety once the officer becomes aware that the driver (or an occupant) of the vehicle may have access to a firearm or

---

[14] (...continued)
searches to the occupant's ability to reach evidence contained in the vehicle).

[15] *See Cady v. Dombrowski*, 413 U.S. 433, 447-48 (1973) (finding police officer's opening of car's trunk without warrant did not violate Fourth Amendment because officer reasonably believed trunk contained gun, trunk was vulnerable to intrusion by vandals, and public might be endangered if intruder removed gun); *United States v. Webb*, 83 F.3d 913, 917 (7th Cir. 1996) (deciding that exigent circumstances allowed officer to retrieve shotgun from car trunk with keys still in the lock because gun could have been easily retrieved and officer feared gun's safety mechanisms might not have been activated, allowing gun to accidentally discharge); *United States v. Ware*, 914 F.2d 997, 1000-01 (7th Cir. 1990) (exigent circumstances permitted officer to search car for gun because it was either in car or had been discarded by defendant, and as such, might fall into untrained or malicious hands); *United States v. Feldman*, 788 F.2d 544, 553 (9th Cir. 1986) (finding that inventory search of car done in violation of police policies was lawful because officer reasonably suspected that car contained gun and search was reasonable to ensure the immediate protection of the public's safety).

other deadly weapon.[16] But as Cardenas points out, it is not unusual for Alaskans to carry guns, and it is not unusual for a gun to be in a vehicle. Here, the record shows that Cardenas's actions were consistent with the actions of a responsible gun owner. Cardenas secured his gun inside a closed rifle case and he placed the rifle case on the back seat of his car, outside his immediate reach. Cardenas notified the officer of the existence of the gun at the beginning of the traffic stop, and he cooperated with all of the officer's requests.[17] It is undisputed that, other than his initial movement towards the rifle case, Cardenas gave the officer no reason for concern. Furthermore, the officer did not have probable cause to believe that the gun case contained contraband or evidence of a crime.[18]

Given these circumstances, we conclude that the officer had no authority to open and search the rifle case. Even assuming that the officer's seizure of the case was justified, the subsequent opening and search of the closed rifle case was not.

*Conclusion*

The judgment of the superior court is REVERSED.

---

[16] *Cf.* AS 11.61.220(a)(1)(A)(i) (requiring a person who is carrying a firearm concealed on their person to immediately inform a peace officer of the firearm when contacted by the peace officer for an official purpose).

[17] *Cf.* AS 11.61.220(a)(1)(A)(ii) (requiring a person who is carrying a firearm concealed on their person to allow a peace officer to secure the weapon for the duration of their contact with the peace officer).

[18] *See California v. Acevedo*, 550 U.S. 565, 580 (1991).